[No. 1204.  Decided March 28, 1894.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE W. MANVILLE, *Appellant*.

WITNESS — CORROBORATION — MISCONDUCT OF COUNSEL — INSTRUCTIONS — QUESTIONS OF FACT FOR JURY.

Where it is sought to impeach a witness by proof that the testimony given by him on the trial as to a certain matter was at variance with a statement made by him prior to the trial, the evidence of others who heard his statement is admissible in rebuttal of the impeaching testimony.

Although incompetent questions are asked by the prosecuting attorney upon the trial of a criminal case for the purpose of prejudicing the jury against the accused, the refusal of the court to rebuke the attorney therefor is not error, when the court, at the time of objection taken thereto, states to the jury that "they are to give no weight to that testimony which is ruled out."

The jury is the tribunal instituted by law to pass upon questions of fact, and, where there is a conflict of testimony, the verdict will not be disturbed by the courts.

*Appeal from Superior Court, Thurston County.*

*Phil. Skillman*, and *Dav. E. Baily*, for appellant.

*Milo A. Root*, Prosecuting Attorney, for The State.

The opinion of the court was delivered by

DUNBAR, C. J.— Appellant was tried upon an information filed against him on the 5th day of September, 1893, in the superior court of Thurston county, for the crime of murder in the first degree, committed by killing one J. S.

McCabe on the 3d day of August, 1893.   The trial resulted in a verdict finding the appellant guilty of murder in the second degree.   Motions in arrest of judgment and for a new trial were made and overruled by the court, and the court sentenced the appellant to imprisonment in the penitentiary for a period of fourteen years.   From the ruling of the court in denying the motions in arrest of judgment and for a new trial, and from the judgment of the court, appellant appeals.   The killing was not denied, the plea being self-defense.

Appellant has assigned as error a great many rulings of the court, both in the admission and exclusion of testimony, which have not been distinctively and especially argued, either in the brief or in the oral argument.   We have, however, regarded them all as contested points and have examined them accordingly, and from such examination, without especially reviewing each assignment, have been unable to find error in any of them.   We will now notice particularly the assignments upon which the appellant mainly relies for the reversal of his case.

During the progress of the trial appellant introduced Coroner Hartsock to prove that Conboy, a witness for the state, had made a statement to him the day after the tragedy occurred, concerning the manner in which the shooting was done; which statement was at variance with a material point made by him on the witness stand.   The state, in rebuttal, introduced three witnesses, viz., Ragless, Foster and Wilson, who testified that the statement made by Conboy was substantially the same as the statement made by him on the witness stand.   The appellant earnestly insists that the admission of this testimony was prejudicial error; that the testimony of a witness cannot be sustained by showing that his testimony corresponds with statements that he had previously made, citing *Ellicott v. Pearl*, 10 Pet. 412, to sustain this contention; and while the general

doctrine announced in that case, and which is, no doubt, a correct doctrine, sustains appellant's contention, the exception made to the general rule is as plainly enunciated as the rule itself, and the case at bar falls squarely within the scope of the exception instead of the rule.

"Where parol proof," says Justice STORY, who rendered the opinion of the court in that case, "has been offered against the testimony of a witness under oath, in order to impeach his veracity, establishing that he has given a different account at another time, we are of opinion that, in general, evidence is not admissible, in order to confirm his testimony, to prove that at other times he has given the same account as he has under oath; for it is but his mere declaration of the fact; and that is not evidence. His testimony under oath is better evidence than his confirmatory declarations not under oath; and the repetition of his assertions does not carry his credibility further, if so far, as his oath. We say in general, because there are exceptions; but they are of a peculiar nature, not applicable to the circumstances of the present case, as where the testimony is assailed as a fabrication of a recent date, or a complaint recently made; for there, in order to repel such imputation, proof of the antecedent declaration of the party may be admitted."

The defendent in this case assailed the testimony of Conboy as a fabrication. That was the object of Hartsock's testimony, to make it appear to the jury that at first Conboy had told the truth, but that subsequently he had fabricated the statement which he made under oath. In fact this is the exact theory yet maintained by the appellant, for in his brief he says:

"Now, throwing aside the evidence of both the appellant and Conboy, as given on the trial, the evidence as given by Hartsock as to what Conboy said immediately after the occurrence, while it was yet fresh in his mind, and before his revengeful feeling could be crystallized into shape, should control."

The rule governing cases of this kind is thus announced in Wharton's Criminal Evidence, § 492:

" When a witness is assailed on the ground that he narrated the facts differently on former occasions, while on re-examination it is competent for him to give the circumstances under which the narration was made, it is ordinarily incompetent to sustain him by proof that on other occasions his statements were in harmony with those made on the trial.    On the other hand, where the opposing case is that the witness testified under corrupt motives, or where the impeaching evidence goes to charge the witness with a recent fabrication of his testimony, it is but proper that such evidence should be rebutted."

See, also, many cases cited to sustain the text.

This, we think, is now the almost universal holding of modern courts, while many courts go further and hold, not of course that a witness can be allowed to manufacture testimony by making a statement in advance and then showing that statement in proof of the correctness of his statement under oath, because it would obviously be no confirmation at all, as testimony under oath is certainly to have more weight than the loose statements made without the solemnity of an oath, but that such statements are properly admissible as confirmatory evidence where the witness' credit is impeached. *Regina v. Megson*, 9 Car. & P., p. 418.

In Indiana it seems to be the universal holding that, if a witness be impeached by proof of his having previously made statements inconsistent with his testimony, he may be corroborated by evidence of other statements made by him in accordance with his testimony.    *Clark v. Bond*, 29 Ind. 555; *Harris v. State*, 30 Ind. 131; *Brookbank v. State*, 55 Ind. 169.

But whatever distinctions the authorities may have made in reference to the admission of this kind of testimony, practically all of them would sanction its admission under

the circumstances of this case; and outside of the legal proposition discussed, it seems to us that this testimony was plainly admissible to show, or at least to tend to show, that Conboy did not make the statements attributed to him by Hartsock, but that Hartsock was mistaken. It was the same conversation that they were testifying to that Hartsock had testified to, not an attempt to prove that at some other time and place the witness had made another or different statement. The jury certainly had a right to the testimony of all the witnesses to the conversation to aid them in determining whether or not the witness made the statement attributed to him by the defendant's witness. This, it seems to us, was the object of this testimony. Certainly this was the practical effect of it.

During the cross examination of the appellant he was asked by the attorney for the state if he did not state to the sheriff on the day of McCabe's funeral that, "if there has been no accident or slip, McCabe was in hell by this time." This question was objected to as incompetent and immaterial, and the court refused to admit it, on the ground that it was not proper cross examination. The question was then asked for the avowed purpose of laying the ground for impeachment. This was objected to, and the objection was sustained. Appellant's counsel then desired to note an exception to the asking of any questions of this sort before the jury; whereupon the court made the following statement to the jury:

"The jury will understand that when they retire their verdict must be made up on the evidence that is given, and they are to give no weight to that testimony which is ruled out."

This statement by the court to the jury, the appellant contends, was not sufficient, but that the court ought to have proceeded to rebuke the attorneys for the state for asking the question. We hardly see how such a procedure

on the part of the court could have been any benefit to
appellant's cause.    If anything, it would have made the
question a more prominent one in their minds, and a more
lasting one in their memories.    The court plainly in-
structed the jury that they were not to consider evidence
which was ruled out.    The instruction was with direct
reference to this question, and made at the time the ques-
tion was asked; and even if we should conclude that it was
an improper question to ask on cross examination, as tend-
ing to show the animus of the defendant, who was then
testifying in his own behalf, the court certainly went as
far as he was justified under the circumstances in going,
when he instructed the jury that such questions should
have no weight with them in the determination of their
verdict.    This was a long and tedious case, and, it seems
to us, is unusually free from error on the part of the court.

It is contended by the appellant that the testimony does
not sustain the verdict; but in the absence of any legal
error we do not feel justified in disturbing the verdict of
the jury.    It is a well established principle that the jury
is the tribunal instituted by law to pass upon questions of
fact, and where there is a conflict of testimony their ver-
dict will not be disturbed by the courts.    This has been
the uniform holding of this court and of all other courts;
and, in fact, there can be no other holding under the law.
This case presents, in its most radical form, a violent con-
flict of testimony.    Defendant Manville and his wife both
positively swear that McCabe and Conboy were down at
the scene of the tragedy during the afternoon of the day
of the shooting and a short time prior to the shooting, re-
lating in detail circumstances that occurred there; while
Conboy and Mrs. McCabe both as positively swear, from
their personal knowledge and observation, that neither
McCabe nor Conboy was down at that part of the farm,
or, in fact, away from McCabe's house until they went

down at the time the shooting occurred.    There is no possible way of reconciling this unfortunate and lamentable conflict in the testimony.    If the statement of Manville and his wife is true, it would go a long way towards impeaching the testimony of Conboy when he comes to testify to what occurred at the time of the shooting.    Upon the other hand, if the testimony of Conboy and Mrs. McCabe is true, then Manville is utterly unworthy of belief.    The jury heard all this conflicting testimony, saw the witnesses on the stand, their appearance and their manner of testifying.    The credibility of the witnesses is by the law especially submitted to their discretion.    The appellant was tried by an impartial court; he was defended both here and in the court below by faithful, earnest and competent counsel; his testimony and the testimony of the witnesses for the state was weighed by a jury of his peers under proper instructions by the court.    Their verdict was against him and he must submit to it.

The judgment is, therefore, affirmed.

STILES, SCOTT, ANDERS and HOYT, JJ., concur.