[No. 37480.   Department Two.   April 15, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. CALLOWAY
RONALD DICKENS, *Appellant.*\*

*\*Reported in 401 P.2d 321.

*John Caughlan,* for appellant.

*Charles O. Carroll, Richard W. Pierson,* and *David H. Beitz,* for respondent.

MacIver, J.†—At approximately 1 a.m. on April 1, 1963, Kenneth Pottle, a self-employed printer then on his way to work, stopped for a cup of coffee at Tommy's Cafe in downtown Seattle. In the cafe were Calloway Ronald Dickens (appellant), his codefendant Woodrow Payton, Delores Ahlgren, John Rogers, and Connie Smith. After finishing his coffee, Mr. Pottle, on leaving the cafe, was followed to his car by Delores Ahlgren, who asked him to give her a ride from that vicinity. Mr. Pottle agreed. She directed him where to drive and invited him to engage in an act of prostitution. Mr. Pottle declined the invitation.

Delores' driving directions resulted in the car arriving at the end of a dead-end street in the vicinity of 29th and Main. Here, Delores left the car and the defendants Dickens and Payton appeared. They threatened Mr. Pottle with a club and what he thought was a gun. He handed them his wallet and wrist watch and was told to leave. Mr. Pottle drove off and found a police patrol car parked on Jackson Street, 2 blocks away. He stopped and reported the robbery to the patrolmen.

April 3, 1963, the appellant and codefendant were charged in justice court with robbery while armed with a gun. Appellant was bound over to the superior court May 3rd; an information charging them with the robbery was filed May 10th. An attorney was appointed May 17th to represent both defendants. The case was set for trial on July 10, 1963.

July 15, 1963, during the progress of the trial, appellant's motion for a mistrial was granted, it then appearing one counsel could not adequately represent both defendants

†Judge MacIver is serving as a judge pro tempore of the Supreme Court pursuant to art. 4, § 2(a) (amendment 38), state constitution.

because of conflicting interests. The case continued as to the codefendant Payton, who was convicted.

Appellant's present counsel was appointed July 29, 1963, and, on that day, the trial date of September 24th was set, appellant's counsel then being present. September 18th, appellant's counsel filed a motion to dismiss the information for failure of the state to bring the case to trial within 60 days from the filing of the information. The motion was heard and denied by the motion judge, September 23, 1963, and reheard and denied by the trial judge at the beginning of the trial, September 24th.

Appellant first assigns error to the court's refusal to dismiss the information for failure of the state to bring the case to trial within 60 days as required by RCW 10.46.010, and for failure of the court to grant the defendant a speedy trial as guaranteed him by Const. art. 1, § 22, and U. S. Const. Fifth, Sixth, and Fourteenth Amendments.

We have held that the constitutional guarantee affords the accused a right that is there if he demands it and that failure to so demand constitutes a waiver. *State ex rel. James v. Superior Court*, 32 Wn.2d 451, 202 P.2d 250.

No such motion was made prior to the first trial. When the second trial date was set, appellant and his counsel were present; no objection to the trial date was then made nor was an earlier date asked, appellant and his counsel electing to remain silent until the 60-day period had expired and until 6 days before the trial was scheduled to begin, at which time the motion was made. We feel that the seeming acquiescence of counsel and client by their silence at the time the case was set for trial constituted good cause for failure of the prosecution to seek an earlier trial date within the 60-day period. The motion was properly denied.

Error is next assigned to the court's denial of appellant's motion to dismiss the information because of failure to afford a hearing of appellant's motion to reduce bail. July 17, 1963, appellant, pro se, moved for a reduction of his bail which had been fixed in the amount of $5,000. Shortly thereafter (the date does not appear in the record),

he was brought before the presiding judge, who was then unable to hear the matter. Appellant's present counsel was appointed July 19th. No further hearing of the matter was sought until the trial began on September 24th, at which time the appellant moved to dismiss the information because of failure to afford him a hearing on the matter of the reduction of his bail. The trial court held that, under these circumstances, the motion had been waived. We agree.

Error is next assigned to the admission in evidence of state's exhibit No. 7, a written, detailed report by the witness Pottle of the events that transpired from the time the witness left Tommy's Cafe until the alleged robbery had been completed. Exhibit No. 7 was written by a detective and each sheet signed by the witness.

The trial court ruled that defense counsel, by his references during cross-examination to what the witness had told the police "opened it up" and rendered the entire statement admissible. A review of the questions asked relating to the witness' reports to the police is necessary. There were two reports to the police. The first, made minutes after the occurrence, was made to patrolmen parked in a prowl car around the corner 2 blocks away. These patrolmen started to take down the report, then called the armed robbery division; two detectives came to the prowl car and took the witness to the police station, where the second report, state's exhibit No. 7, was made. On cross-examination, the witness was asked:

Q. . . . you did not at first make any indication in reporting this that there had been any kind of a gun or a deadly weapon used in connection with this, did you? A. Yes. You mean, to the patrolmen? Q. To the patrolmen.

The witness answered that, to the patrolmen, he had mentioned armed robbery, a club and a gun.

Exhibit No. 7 does not purport to contain the witness' statements to the patrolmen. The witness was then asked if, when he testified in justice court, he had not stated that he got out of the car when the girl asked him to. He denied so testifying. He was then asked if, in reporting the incident, he had ever said that, after he got into the dead-end street,

he got out of the car. He answered: "Not to my knowledge no; the answer is no." Later defense counsel asked that the initial report of Mr. Pottle, which was taken down by the police, be produced "for our examination in connection with cross-examination." Exhibit No. 7 was produced and the court then recessed.

No other questions referring to what the witness reported to the police were asked by defense counsel prior to the admission of state's exhibit No. 7.

At the conclusion of the cross-examination, the written statement was offered by the prosecution. The defense counsel objected that it was a self-serving statement which would be admissible only in connection with possible impeachment.

THE COURT: Well, there was impeachment. MR. CAUGH-LAN: No, your Honor. THE COURT: Ordinarily, Mr. Caughlan, that would be true, but you inquired of this witness as to what he said at that time. My notes are that he was questioned about what he said to the police. Isn't that true? MR. CAUGHLAN: Beg pardon? THE COURT: That is true, isn't it? MR. CAUGHLAN: Yes, that is correct. THE COURT: I think you have opened it up. The objection is noted and will be overruled. State's Exhibit 7, the statement, is received in evidence and may be read to the jury.

█ Had there been impeachment, the statement, exhibit No. 7, would not have been admissible for the purpose of re-establishing the witness' credibility, there having been no inference of recent fabrication.

We have heretofore, in *State v. Murley,* 35 Wn. (2d) 233, 236, 238, 212 P. (2d) 801, summarized our prior holdings as follows:

"When, on trial, *no attempt has been made to impeach* a witness' credibility, his prior out-of-court statements consistent with his oral testimony are inadmissible. [Citing cases.]

"Also, *when a witness' credibility has been assailed* by prior out-of-court statements *inconsistent* with his in-court testimony, prior out-of-court statements *consistent* with his in-court testimony are excluded. . . .

"  .  .  .

"  .  .  .  A witness' prior out-of-court statements consistent with his in-court testimony are admissible for the

sole purpose of re-establishing the witness' credibility when: (1) his testimony has been assailed (2) under circumstances inferring recent fabrication of his testimony (3) when the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements. [Citing cases.]" *Benjamin v. Havens, Inc.*, 60 Wn.2d 196, 202, 373 P.2d 109.

See, also, *State v. Pitts*, 62 Wn.2d 294, 382 P.2d 508.

The respondent contends, however, that exhibit No. 7 was not introduced as corroborative evidence "but only to bring out the entire transaction, a portion of which was developed by appellant during cross-examination." This is not an instance of a witness being examined as to a portion of a writing so as to make the remainder admissible, nor, here, did the scope of inquiry on cross-examination necessarily encompass the nature and contents of the statement, as was the case in *State v. Ingle*, 64 Wn.2d 491, 392 P.2d 442.

The admission of exhibit No. 7 was error. It is urged that, though it be error, it is not prejudicial because the contents of the writing were merely cumulative of the witness' testimony. We do not agree. The prejudice here lies in the fact that the jury was permitted to take to the deliberation room the prosecuting witness' hearsay detailed account in writing of the events leading up to and constituting the alleged robbery.

Since the judgment here must be reversed because of error in the admission of Exhibit No. 7, it is not necessary that we consider appellant's assignments of error No. 4 and No. 8, other than to state that, upon a retrial, an attempt by the prosecution to show that the codefendant Payton had been previously convicted of another robbery committed in the same place or same vicinity as the alleged robbery for which the appellant here is on trial would be improper.

During cross-examination of the witness Delores Ahlgren by appellant's counsel, she stated that she wished to change her story. In the absence of the jury, she was promised immunity for any crime growing out of the transactions about which she was being questioned, and it was then

made clear to her by the court that she was not promised immunity from perjury.

At the close of the state's case, the appellant moved for a mistrial, contending that the granting of immunity and the denial of the witness' privilege against self-incrimination constituted misconduct on the part of the court and the prosecution. Appellant contends that the denial of this motion constitutes error. We do not agree.

> The privilege to refuse to testify on the ground that such testimony would tend to incriminate him, belongs exclusively to the witness and cannot be taken advantage of by the defendant. *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341.

Neither may the defendant claim prejudice because a witness is granted immunity.

Appellant next assigns error to the court's failure to give three proposed instructions. The jury was fully and properly instructed. We find no error in the refusal of the court to give these proposed instructions.

RCW 9.95.015 provides in part:

> [O]r if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime.

After the jury had returned a verdict of guilty of robbery, a special verdict form was submitted and the jury instructed to find whether or not, at the time of the robbery, the defendant was armed with a deadly weapon. Appellant assigns the manner of submitting separate verdicts as error. While we are agreed that no prejudice resulted to the appellant from the procedure here followed, we are not cited nor do we find authority nor reason for the submission of the special verdict after the general verdict has been returned. Absent such authority, the procedure here followed was error.

The judgment and sentence is reversed and the case remanded for a new trial.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.