No. 13065

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

A. B. McEWEN,

Plaintiff and Appellant,

-vs-

BIG SKY OF MONTANA, INC.,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, District Judge presiding.

Counsel of Record:

For Appellant:

Brown and Gilbert, Bozeman, Montana
Gene I. Brown argued, Bozeman, Montana

For Respondent:

William L. Pepper argued, Big Sky, Montana

Submitted: December 8, 1975

Decided: JAN 16 1976

Filed: JAN 9 1976

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Gallatin County, granting plaintiff damages and the return of his truck. Plaintiff contends the damages are insufficient. Defendant cross-appeals the denial of its motion to dismiss for failure to state a claim upon which relief can be granted.

In November, 1972, plaintiff leased a 1952 three-quarter ton Dodge Power Wagon to defendant for use in the construction of ski lifts and downhill runs at its ski resort. The rental for the leased truck was set at $150 per month. The lease was in the form of a purchase order prepared by defendant, who was in possession of the truck at the time of signing the lease/purchase order.

In February, 1973, plaintiff was informed by an employee of defendant that his truck was no longer needed by defendant, but the truck needed some repair work. The truck was taken by defendant's employee to a Bozeman garage for repairs, but was removed to Big Sky when defendant felt the repairs could be done at a lower price by its own mechanics.

In June, 1973, plaintiff received a call from defendant's purchasing agent informing him the truck was repaired and he could pick it up at Big Sky. Plaintiff went to Big Sky and drove the truck from the upper village to the lower village, a distance of nine miles down the mountain. At trial, plaintiff testified:

> "Well, the transmission was making a lot of noise and it was rattling and missing. It would hardly run."

At the lower village, the purchasing agent took a ride in the truck and agreed the transmission sounded noisy. Plaintiff refused delivery of the truck and the purchasing agent agreed to have one of defendant's mechanics look at it again. Plaintiff

was under the impression defendant would repair the truck so that it would be in as good condition as when received, except for normal wear and tear.

From June, 1973, through March, 1975, the truck remained at Big Sky without repairs. During this period, plaintiff made one or more trips to Big Sky attempting to collect rental on the truck for the time it was being kept by defendant. Plaintiff retained counsel who demanded the truck be repaired, returned and rent paid up to the date of return. Suit was filed in June, 1974, and the truck was repaired and tendered one week before trial, in March, 1975. An employee of Big Sky admitted the truck had not been repaired earlier because it was either forgotten, ignored or put on a low priority.

At trial, Big Sky moved for a dismissal because the complaint failed to state a claim for relief based upon breach of contract since plaintiff did not allege performance of his obligations under the contract or facts which excuse such performance. The motion to dismiss was denied by the district court.

The district court found a valid and enforceable contract for the lease of the truck with defendant legally obligated to return the truck in the same condition as it was when defendant accepted possession, ordinary wear and tear excepted. The court then held the lease was terminated in June, 1973, as plaintiff had abandoned the truck at the lower village at that time, preventing return of the truck by defendant. The court also held plaintiff failed to mitigate damages subsequent to June, 1973. The court further held there was no agreement concerning repair of the truck at the time plaintiff left it at the lower village.

The district court ordered the truck returned to plaintiff with payment by Big Sky of $600 rent due. Plaintiff appeals this order contending the findings and conclusions of the district

court are contrary to the evidence presented at trial.

Defendant cross-appeals, contending error in the denial of its motion to dismiss.

The issues presented for resolution by this Court are:

1. Whether or not in order to state a claim for relief based on breach of contract, a complaint must contain an allegation that the moving party performed his part of the contract or allegations of facts excusing such performance.

2. Whether or not the findings and conclusions of the district court are supported by the evidence.

Defendant contends an action for breach of contract must contain allegations of performance by the moving party or allegations of facts excusing such performance. Defendant cites a number of decisions by this Court and statutory provisions to support its position, none of which are on point.

Rule 8(a), M.R.Civ.P., provides:

> "A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. * * *"

Plaintiff's complaint contains the elements required by Rule 8(a).

Defendant cites Rule 9(c), M.R.Civ.P., to support its contention that plaintiff must allege performance on his part in his complaint. Rule 9(c) provides:

> "Conditions Precedent. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. * * *"

Defendant also cites Harris v. Root, 28 Mont. 159, 72 P. 429; First Nat. Bank v. Stoyanoff, 137 Mont. 20, 349 P.2d 1016, and

First Nat. Bank v. Stoyanoff, 143 Mont. 434, 390 P.2d 448, to support its contention that performance must be alleged.

The _Harris_ case and first _Stoyanoff_ case were decided prior to the adoption of the present Montana Rules of Civil Procedure. Rule 9(c) and both _Stoyanoff_ cases deal with clear conditions precedent; _Harris_ also involved a condition precedent, although not using that term.

This Court in Atlantic-Pacific Oil Co. v. Gas Dev. Co., 105 Mont. 1, 16, 69 P.2d 750, has defined a "condition precedent" as:

> "' * * * one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties.'"

See, also, section 58-206, R.C.M. 1947.

No condition precedent is included in the lease in question in this action. The full lease is contained on the face of the purchase order prepared by defendant. The purchase order calls for rental of the truck starting November 14, 1972, with the lease terminable by either party upon ten days notice and rent payable monthly in advance. No conditions are imposed on plaintiff; except the termination condition, which is not a condition precedent.

The district court was correct in denying defendant's motion to dismiss as the complaint complied with the Montana Rules of Civil Procedure and stated a claim upon which relief could be granted.

We now turn to the issue of whether the findings and conclusions of the district court are supported by the evidence.

An appellate court's function in a case such as this was set forth in Hornung v. Lagerquist, 155 Mont. 412, 420, 473 P.2d

541, wherein this Court said:

" * * * Our duty in reviewing findings of fact in a civil action tried by the district court without a jury is confined to determining whether there is substantial credible evidence to support them. * * *"

The meaning of "substantial credible evidence" was thoroughly considered in Staggers v. U.S.F. & G. Co., 159 Mont. 254, 496 P.2d 1161.

In Hellickson v. Barrett Mobile Home Transp., 161 Mont. 455, 459, 507 P.2d 523, this Court said:

" * * * In examining the evidence, we must view the testimony in a light most favorable to the prevailing party. [citations] However, while the presumption is in plaintiff's favor, he is also the appealing party and as such, the burden is upon him to overcome the presumption of the correctness of the trial court's findings of fact."

The district court found defendant tendered the truck to plaintiff in June, 1973, with plaintiff abandoning the truck without any agreement concerning its repair.

The leading case in Montana on abandonment is Conway v. Fabian, 108 Mont. 287, 306, 89 P.2d 1022, where this Court stated:

"What constitutes abandonment of personal property? To establish abandonment both intention to abandon and actual relinquishment must be shown. * * * 'Abandonment' is a word which has acquired a technical meaning. * * * It is the relinquishment of a right; the giving up of something to which one is entitled. In determining whether one has abandoned his property or rights the intention is the first and paramount object of inquiry. This intention is ascertained not only from the statements which may have been made by the owner of the property, but also from the acts of the owner. * * *"

The intention of plaintiff in leaving the truck at Big Sky, and the understanding of defendant, as shown by its purchasing agent, Norman Olsen, can be shown by the following testimony at trial:

"MR. McEWEN:

"Q. What occurred then when you got back to Meadow Village? A. Well, I got Mr. Olsen and

we took a drive in the truck around a circle
there.  And he agreed it wasn't fixed properly.
And so we left the truck there.  And he was
going to have them come down and get it and re-
pair it, and contact me at a later date."

Mr. Olsen testified:

"A.  He [McEwen] was complaining with regards to
the transmission, and some other items.  The con-
dition of the transmission.  I got into the truck,
took a spin, and came back.  The transmission did
sound noisy.  And, therefore, I requested that he
refuse to accept the truck.  And I said that I
would offer our mechanics to look at it again.

" * * *

"Q.  Did you understand from that that he was to
leave the truck and that Big Sky would then repair
it?  A.  I was to understand from that that I would
have our maintenance department look at the truck
to meet his objections to the condition of the truck.

"Q.  Aren't you saying that you expected Big Sky to
repair it?  A.  Right."

There is no indication in the record that plaintiff in-

tended to abandon his truck at Big Sky.  The substantial, uncon-

troverted testimony of plaintiff and defendant's agent indicates

an intent to have the truck repaired by Big Sky to plaintiff's

satisfaction.  That is the reason the truck was left at Big Sky.

The district court found plaintiff failed to mitigate his

damages subsequent to June, 1973.

The district court found defendant had a legal duty to

return the truck in the same condition as when it took possession,

except for normal wear and tear.  Defendant defaulted on this duty

by tendering the truck to plaintiff without completing the proper

repairs.  This Court held recently in Business Finance Co. v.

The Red Barn, 163 Mont. 263, 267, 268, 517 P.2d 383:

" * * * the nondefaulting party, was only required
to act reasonably under the circumstances, so as
to not unnecessarily enlarge damages caused by
the default. "

Defendant contends plaintiff did not act reasonably to

mitigate his damages, since he would not accept the truck as

tendered in June, 1973, and perform the necessary repairs himself, looking to defendant for reimbursement. It was the duty of defendant to repair and return the truck with all due speed. The duty of repair was not on plaintiff, especially when the extent of the needed repairs could only be gauged by a mechanic, such as those employed by defendant.

Defendant contends plaintiff should have hired a mechanic to see what repairs were needed, thereby failing to mitigate damages if such an examination would have revealed the repairs to be minor. The record shows defendant had previously taken the truck to a Bozeman garage, ran up a bill of $85 to $90 to have the truck torn down, then hauled it to Big Sky telling plaintiff the truck could be repaired with less expense by defendant's own mechanics. After this episode, defendant maintains it would be reasonable for plaintiff to go through this whole procedure again to possibly mitigate damages. We do not agree.

Defendant contends plaintiff did not make sufficient efforts to hasten the repair of the truck and lessen the period over which possible rental was due. Plaintiff contacted defendant's agents on two or more occasions inquiring as to the status of his truck and requesting rental payments on at least one occasion. Plaintiff retained an attorney who on more than one occasion contacted Big Sky demanding repair and return of the truck. This lawsuit was instituted in June, 1974, and the truck was not repaired until March, 1975. We believe plaintiff made sufficient efforts to demand the repair and return of his truck. Defendant's agent admitted at trial that the truck was either forgotten, ignored or given a low priority, therefore any delay was not the result of action or inaction on the part of plaintiff.

We do not find substantial credible evidence that plaintiff abandoned his truck or failed to mitigate damages. Defendant

did not tender the truck to plaintiff in June, 1973, in the same condition as when possession was taken, excepting normal wear and tear. Proper tender was not made until March, 1975. Plaintiff is entitled to all accrued and unpaid rent from the date of the lease, November, 1972, until tender in March, 1975.

The judgment of March 31, 1975, is hereby reversed with directions to enter a judgment consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 9 -